## Stoddart *versus* Robinson.

In a scire facias on a mortgage the defendant by her affidavit of defence averred that she never was indebted to the mortgagee; that she gave the mortgage on representations and solicitations of her father, stating them,— which were not true; that the mortgage was given in mistake. There was no allegation that the knowledge of these things had been traced to the mortgagee. *Held*, not to be a sufficient affidavit of defence.

February 26th 1867. Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

This was a scire facias issued, August 3d 1866, by Mary M. Robinson, administratrix, &c., of Sarah Kean, deceased, against Ellen H. Stoddart, on a mortgage on a house in Logan street, Philadelphia, dated August 7th 1851, from the defendant to Sarah Kean to secure $800 in ten years with interest half-yearly.

The defendant filed the following affidavit of defence:—

"I am the defendant in the above-entitled case, and have a just, full and true defence to the whole of the plaintiff's claim in the above action, the nature and character of which are as follows: the mortgage on which suit is brought is dated August 7th 1851, and is for $1600, conditioned for the payment of $800. It appears on its face to be an absolute mortgage in the common form to secure money loaned, as if the said Sarah Kean had loaned me, or I had, at some time or in some way, owed the said Kean the sum of $800. Yet such, in fact, is not the truth; the

[*Stoddart v. Robinson.*]

said mortgage was not given to secure any indebtedness whatever existing, at any time, between me and the said Sarah Kean, as none whatever, of any kind or at any time, existed. That the said Sarah Kean never did, nor did any person for her, ever give me, or any other person, any value or forbearance in any shape or form for the said mortgage. I never owed the said Sarah Kean the value of a cent in money, duty, service or other valuable thing of any kind or description. That I gave the mortgage, however, is nevertheless true; but, under the circumstances, as follows: At the date of said mortgage I resided with my father, the late John Stoddart, Esq. I resided with him all my life, until his death, which took place January 23d 1857. I always loved my father with an intensity of affection, and his influence over me was of a nature so powerful that I never ventured to decline doing anything he desired me to do. I trusted in him with unreserved confidence and obedience. About the time of the date of the mortgage my father called me to him, at home, and told me he wanted me to give Sarah Kean a mortgage on my house in Logan street. He was then very old, and his mind seemed troubled and uneasy. He said something might be coming to Sarah Kean from the estate of Mary Harman; that she might have left her something, and he was anxious to secure her in getting it, if such was the case; and he wanted me to give the mortgage for that purpose and for nothing else. The impression it made on my mind, and as I understood it, was, that Mary Harman had left Sarah Kean something by will, and that father was anxious, for some reason, to help or secure her in getting it, and wanted me to give the mortgage for that purpose. The fact is, Mary Harman died intestate, in this county, in 1849, but I did not know that fact till quite recently. I had never given a mortgage before, nor have I ever given one since. I did not know what a mortgage was, nor the effect of it. I did not read the mortgage, nor was it read to me. I did not presume to question his motive in asking me to give the mortgage, nor do I now. I was too anxious to gratify him in all things, believing then, as I believe now, that he had a proper motive, at that time, in asking me to give the mortgage. I gave it to him without hesitation, in pursuance of his request, without questioning him about it, and entirely and solely on the information he thus gave me, and without any consideration whatever other than his mere request. I did not receive a particle of value or benefit, or forbearance for myself or for any other person, from any person for the said mortgage. After the mortgage was signed my father took it. I did not know what he did with it. I did not deliver it to Sarah Kean; he may have done so. I had never had a word with her on the subject, nor was she present at any time with us. I did not know her in the matter; I did it all for my

[Stoddart *v.* Robinson.]

father, and for him only. It is now about seventeen years since the death of said Mary Harman, and during all the time that has elapsed neither the said Sarah Kean in her lifetime, nor her legal representatives since her death, have taken any proceeding, legal or otherwise, to ascertain whether the said Sarah Kean had any interest in the estate of said Mary Harman. I am informed and believe that the said Mary Harman left no property whatever in which the said Sarah Kean had any interest, and that said Sarah Kean was neither heir, next of kin nor creditor of said Mary Harman, nor in any way interested in her estate. I now aver, that said mortgage was given on my father's mistake, in supposing that said Kean had an interest in the estate of said Harman, which could be secured by the said mortgage. I am advised by my counsel that the mortgage was at most cautionary only, and that if any consideration ever existed for it, the same has utterly and entirely failed, and will have failed until said plaintiff shall have established the fact that said Kean had an interest in the estate of said Harman, to be secured by said mortgage."

In the appellee's counter statement other facts were stated which were not contradicted, and which are referred to in the opinion of the court.

The court below gave judgment for want of a sufficient affidavit of defence: which was the error assigned.

*Lawrance*, for plaintiff in error, cited Kennedy *v.* Ware, 1 Barr 450; Hind *v.* Holdship, 2 Watts 104; Mercer *v.* Lancaster, 5 Barr 162; Esling *v.* Zantzinger, 1 Harris 53; Hamaker *v.* Eberley, 2 Binn. 509; Lumbermen's Bank *v.* Smith, 1 Barr 504; Bixler *v.* Ream, 3 Pa. R. 282; Bieber *v.* Beck, 6 Barr 200; Logan *v.* Matthews, 6 Id. 417; Perkins *v.* Gay, 3 S. & R. 331; Adamson *v.* Potts, 4 Barr 236; Cassell *v.* Cooke, 8 S. & R. 294; Rankin *v.* Mortimer, 7 Watts 374; McAninch *v.* McLaughlin, 1 Harris 375; Good *v.* Herr, 7 W. & S. 255; Bishop *v.* Reed, 3 Id. 264; Geiger *v.* Cooke, Id. 270; Bellas *v.* Hayes, 5 S. & R. 427; Crotzer *v.* Russell, 9 Id. 80; Gibson *v.* Union Rolling Co., 3 Watts 32; Miles *v.* Stevens, 3 Barr 21; Horbach *v.* Gray, 8 Watts 497; Baring *v.* Shippen, 2 Binn. 166; Stubbs *v.* King, 14 S. & R. 206; Carpenter *v.* Groff, 5 S. & R. 162; Geiger *v.* Cooke, 3 W. & S. 266; Houk *v.* Foley, 2 Pa. R. 245; McCulloch *v.* McKee, 4 Harris 292; Hampton *v.* Commonwealth, 7 Id. 329; Harlan *v.* Harlan, 8 Id. 303; Latapie *v.* Pecholier, 2 W. C. C. R. 180; Schuylkill Co. *v.* Thoburn, 7 S. & R. 419; Simpson *v.* Ammons, 1 Binn. 177; Wentz *v.* Dehaven, 1 S. & R. 317; Craft *v.* Webster, 4 Rawle 255; Wilson *v.* Shoenberger, 7 Casey 295; Cobb *v.* Page, 5 Harris 469; Kidder *v.* Boom Co., 12 Id. 193; Hancock's Appeal, 10 Casey 155; Swain *et al. v.* Ettling, 8 Id. 486; Miller *v.* Fichthorn, 7 Id. 252.

[Stoddart v. Robinson.]

*J. B. Townsend,* for defendant in error, cited Sharrington v. Strotton, Plowden 308; Shubrick v. Salmond, 3 Burr. 1637; 1 Fonb. 334; Pillans v. Van Mierop, 3 Burr. 1675; Baun v. Winthrop, 1 Johns. Ch. 329; 1 Bouv. Bac. Abr. 165, F. *Agreement,* Letter B. 21; Campbell's Estate, 7 Barr 100; Yard v. Patton, 1 Harris 278–284; Steinhouse v. Witman, 1 S. & R. 438; Hart v. Porter, 5 Id. 201; Hesser v. Helm, 8 Id. 178; Delamater's Estate, 1 Wh. 375; 1 Bouv. Bac. Abr. 166; Morris v. Burroughs, 1 Atk. 401; Black v. Cord, 2 Harris & McGill 103.

The opinion of the court was delivered, April 1st 1867, by

READ, J.—The defendant, a single woman, on the 7th August 1851, executed a bond to Sarah Kean, a single woman, in the penal sum of $1600, conditioned for the payment of $800 in ten years from date, with interest payable half-yearly, the first payment to be made on the 7th February 1852, if default for thirty days in payment of interest, the whole principal sum to be due at the option of the obligee.

This debt was also secured by a mortgage reciting said bond, and bearing even date therewith, and recorded on the 26th September 1851, in Mortgage Book G. W. C., No. 44, page 80, &c., executed by the said defendant to the said decedent, of a two-story brick house and lot of ground, west side of Logan street, 79 feet 3½ inches south of Green street, 15 feet front by 50 feet deep, in the district of Spring Garden, now in the city of Philadelphia, being the same premises which Curwen Stoddart and wife, by indenture bearing date the 25th day of April, A. D. 1851, intended to be recorded with the mortgage, granted and conveyed to the said Ellen H. Stoddart in fee, subject to a mortgage-debt of $750, with interest, to John J. Smith.

Sarah Kean, the mortgagee, died in October 1855, and the principal fell due on the 7th August 1861, at a time of great depression. The interest was regularly paid both before and after the death of the mortgagee, the last half-yearly payment being made on the 7th February 1866.

On the 3d August 1866 this scire facias on the mortgage was issued, returnable the 1st Monday of August, and service accepted, and the 24th August an affidavit of defence was filed by Benjamin Ripperger, for defendant, and on the 8th September a rule was entered for judgment for want of a sufficient affidavit, and on the 17th an affidavit of defence by the defendant was filed, and on the same day the rule was made absolute and judgment for the plaintiff, and on the next day a lev. fa. was issued.

The affidavit of the defendant states that her father, for whom she alleges this bond and mortgage was given, died on the 23d January 1857, more than four years before the principal became due.

[Stoddart *v.* Robinson.]

After the regular payment of interest for fifteen years, the defendant now affirms that she does not owe this money, and thus accounts for her having executed this bond and mortgage, and recognised them as perfectly valid securities during the whole of that period :—

"That her father told her he wanted to give Sarah Kean a mortgage on my house in Logan street. That something might be coming to her from the estate of Mary Harman; that she might have left her something; that he was anxious to secure her in getting it if such was the case; and he wanted me to give the mortgage for that purpose and for nothing else. I gave it to him without hesitation in pursuance of his request without questioning him about it, and entirely and solely on the information he thus gave me, and without any consideration whatever than his mere request. I did not receive a particle of value or benefit or forbearance for myself or for any other person from any person for the said mortgage. Her father took the mortgage, she did not deliver it to Sarah Kean, he may have done so. She never had a word with deceased upon the subject, nor was she present at any time with us. I did not know her in the matter."

Mary Harman died intestate in this county in 1849; the affirmant is informed and believes that Mary Harman left no property in which Sarah Kean had any interest, and that she was neither her next of kin or creditor of Mary Harman; and that during the seventeen years since her death, neither Sarah Kean nor her legal representatives have taken any proceeding to ascertain whether the said Sarah Kean had any interest in her estate, and this seems to be accounted for by the fact stated by the defendant that she never had any.

From this statement it is perfectly clear that this bond and mortgage were executed in due form by the defendant freely and voluntarily and handed to her father, who must have delivered them to the decedent, as the mortgage was recorded and both instruments were found amongst the papers of the decedent by her legal representatives. Besides, the interest was regularly paid to her in her lifetime, and after her decease to her legal representatives, by the defendant, whether in person or not we are not informed; but the money must clearly have been furnished by the defendant after her father's death for a period of nine years. We are not informed that the father was not a debtor to the decedent, and that the securities were not used by him to pay or secure her. All that we are told is that the defendant gave this bond to her father upon representations which turned out to be without foundation. No knowledge of them is traced to Sarah Kean, nor is it alleged that she ever heard of them, they are entirely confined to the father and daughter. During the life of the father it was acted upon by him and his daughter as a valid

[Stoddart v. Robinson.]

security, and was so regarded by the daughter for nine years after his death.

It would be a dangerous doctrine to hold that such loose allegations should be considered a defence to this suit. The court below were, therefore, right in entering judgment for want of a sufficient affidavit of defence.

Judgment affirmed.